LE HARDY *v.* ACOSTA.

APPEAL from the District Court of San Juan, Section 2.

No. 803.—Decided May 29, 1912.

PATRIA POTESTAS—CASES IN WHICH PATRIA POTESTAS MAY BE SUSPENDED OR DEVESTED.—A father can be devested of his *patria potestas* or suspended in its exercise only in the cases expressly stated in section 236 of the Civil Code, the maxim *expresio unius est exclusio alterius* being applicable.

ID.—INSUFFICIENT EVIDENCE—EXCESSIVE HARSHNESS—DEPRAVITY.—According to the doctrine expressed in the foregoing paragraph, when there is no evidence, as in the case at bar, that the father had treated his children with excessive harshness or had given them commands, advice or example of a corruptive nature a judgment depriving him of his *patria potestas* is erroneous and will be reversed.

CRUELTY—SECOND MARRIAGE.—The fact that the father contracted a second marriage a short time after his widowhood or that his second wife did not merit the favorable opinion of his mother-in-law does not bring the case within section 236 of the Civil Code which provides when the *patria potestas* may be suspended or devested, nor does the fact that the father confided the care of the children of his first marriage to their stepmother constitute cruelty. The case of *Ex parte Ryan,* 126 La., 454, is discussed but does not apply to the case at bar.

ID.—WELFARE OF CHILDREN—DUTIES OF COURTS.—The welfare of children should be the object of the special attention of the courts and they should always bear in mind that the laws have been enacted for this purpose and exercise this attention accordingly.

ID.—APPOINTMENT OF GUARDIAN—REVERSAL OF JUDGMENT.—If the trial court in the case at bar had only committed the error of not appointing a guardian for the minors the case would be remanded with instructions to correct this error, but as the error committed by said court is contrary to law it will be reversed.

The facts are stated in the opinion.

*Messrs. López Landrón* and *Rincón* for appellant.

*Mr. Juan Hernández López* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The late judge of the District Court of San Juan, in the Second Section, on the 17th of April, 1911, in this case rendered the following judgment:

"After properly considering the evidence presented and having duly examined the case, and for the reasons set forth in the opinion to accompany the record, the court renders this final judgment, dismissing the complaint and ordering that the children, Philip and Hilda Le Hardy y Meltz, be placed under the custody of their grandmother, on their mother's side, Mrs. Juana Acosta, widow of Meltz, who is defendant herein, until the court makes a new ruling on the matter, the plaintiff always being entitled to exercise his right of presenting himself before the court at a later stage of the proceedings and when the circumstances of this case have suffered a change in such a manner that it may be necessary for the court to make a new ruling on behalf of the children; and that the order made by this court, permitting the plaintiff to have the custody of the children during six hours on every Sunday, shall remain in force, so far as the same is not changed by the court."

From this judgment the appeal now before us was taken and after due argument and elaborate briefs was finally·sub-

mitted for decision on the 9th of April last. As grounds for reversing this judgment the appellant, through his counsel, assigns 12 errors claimed to have been committed by the trial court in its rendition. It is only necessary to quote one of these specifications of error; it reads as follows:

"Seventh. The court below committed a manifest error as to all the precepts set forth in section 236 of said Code, depriving the father of his *patria potestas* (paternal authority), either partially or totally, and suspending him indefinitely in the · exercise thereof as to the principal duties, notwithstanding the fact that none of the causes expressly required by said legal precept were either alleged or proven, to wit, the excessive harshness of the father toward the children, the commands, advices or example of a corrupt nature given to said children, and what is more, without naming a tutor for them as would have been proper in such a case."

It is unnecessary at present to notice the other errors assigned, as the main question is presented in the proposition contained in the seventh as stated.

The principal section of the Revised Civil Code of Porto Rico alleged to have been violated, in falling into the above assigned error, is the following:

"Section 236.—The courts may deprive parents of the *patria potestas* or suspend the exercise thereof, if they treat their children with excessive harshness, or give them commands, advice or example of a corruptive nature, and shall name a tutor, in accordance with law, for the persons of the said children. In such cases they shall also deprive the parents of the usufruct and administration of the property of the children, and adopt such measures as they shall deem expedient in the interests of the latter."

Many other statutes are claimed to have been infringed and disregarded, but it is unnecessary to advert to them at present.

So it is apparent that the appellant claims that the decision of his rights in this case should be governed by our own statutes, regardless of any principles announced in American jurisprudence. Let us then glance at the facts.

The two letters written by the plaintiff, and on which, to some extent at least, the claims of the defendant are based, read as follows:

"June 5, 1910. Mr. Angel Acosta Quintero, Arecibo. My Dear Uncle Angel: Your esteemed letter, which is full of good advice, was handed to me by Cocó this morning. It has been a consolation for me to see that, notwithstanding all which has happened from the time of my arrival in Porto Rico and which is incomprehensible even for me that I had forgotten all about the matter, you may have taken an interest in my behalf. Of course, I understand the interest you have taken toward those innocent creatures who have been deprived of the love of their sacred mother at such an early age. Words cannot explain my gratefulness toward you.

"Day before yesterday I spoke carefully with Solita in regard to all these things. She has been as a mother with me and I shall always remember her with affection.

"At the first opportunity, and within two weeks, I shall sail and my beloved children will be left under the good care of the family who greatly love them. When they grow older, and if fortune permits it, I shall come for them in order that they may be able to finish their education in the company of my esteemed mother.

"Every day I believe more in destiny. It seems that I forethought all which has occurred during these last months, and that I had foreseen even the least detail, probably in another existence. It seems to me that I have been overcome by the strong arm of destiny and that I have acted in a similar way as if I was a man deprived of a heart and of any feelings, when I am entirely different.

"The moment has arrived for me to perform my duties, and I return to the company of my old mother to console and help her in all that I can during the last years of her life.

"I leave the country without having any means of subsistence, but trusting in God's will.

"I reiterate to you my gratefulness for all, and I hope that Providence will always watch over yourself and all of yours.

"Your affectionate nephew,

(Signed) "PHILIPPE LE HARDY."

"San Juan, P. R., June 15, 1910. Mrs. Juana Acosta, widow of Meltz, San Juan. My Distinguished Lady: It being necessary for me to sail for the United States within a short time, I authorize you to have my children under your care and company until I decide later

what I deem most convenient and proper regarding their education
and future.

"I take a special pleasure in showing you the confidence and
affection I have toward you, in the belief that my children will have
in yourself a true mother who loves and protects them affectionately.

"With great consideration, I remain,

"Sincerely yours,

(Signed)        "P. Le Hardy."

Now let us consider the rights of the parties to this suit
in the light of the allegations made in the pleadings, the evi-
dence adduced on the trial, and the law applicable to the facts.

This suit was brought by Le Hardy against the mother of
**his deceased wife to subject his children, Philip and Hilda,**
aged about four and three years, respectively, and who had
been left by him temporarily in the care and custody of the
defendant, to his authority as their father, enforcing the
paternal authority (*patria potestas*) conceded by our Civil
Code.  He alleged that he claimed possession of his children
in order that he might enjoy their company and educate and
instruct them according to his means.

The defendant resisted the suit of the father and sought
to retain possession and custody of her grandchildren, alleg-
ing that the plaintiff had married a second time and desired
to place these children of tender years under the maternal
care of the second wife.  That plaintiff in the year 1909 had
left the Island, leaving his wife and children in care of the
defendant, who is their mother and grandmother, respectively;
that after four months of absence on the part of the plaintiff
his wife had died, in the month of January, 1910; that on his
return Le Hardy had found his children bereft of their mother
and cared for in the home of their grandmother, the defend-
ant; that during his return voyage to this Island the plaintiff
was in company with a young woman under anomalous and
extraordinary circumstances; and that since their return the
plaintiff had lived with the said young woman in Cataño as
husband and wife.  This was stated by the defendant in her

answer, on information and belief. And that finally, on the 11th of June, 1910, the plaintiff was married to the young woman aforesaid, scarcely five months after the death of his wife. That the plaintiff had indicated a desire to remove these children of tender years from their native island to a foreign clime—that is to say, to the United States. That after some discussions between plaintiff and defendant he wrote the letters dated 5th and 15th of June and hereinbefore set out. Other immaterial matters are also alleged, and defendant concludes her answer with the allegation that it constitutes excessively cruel treatment toward these children on the part of the plaintiff to take them away from the maternal care of the defendant in order to make them live in their new home under the conditions mentioned and at such a tender age. The defendant accordingly prays for a judgment dismissing the complaint, and, in accordance with section 236 of the Civil Code of Porto Rico, sustaining the plea in reconvention and ordering the plaintiff to comply with this agreement or to deprive him of his paternal authority (*patria potestas*) or to suspend the exercise thereof in regard to the care of his children, who are claimed until they arrive at the age of instruction, which may be at the age of 10 years for the boy and 12 for the girl, or such as the court in its good judgment may designate, naming the defendant to be the guardian of the said children, in order that she may have the care of their persons up to the ages indicated, adopting in the meantime such interlocutory orders as may be proper for the interests of the said children, and that the costs may be adjudged against the plaintiff.

There is no doubt, as is shown by the record, that the children, Philip Le Hardy and Hilda Le Hardy, born during the years 1906 and 1907, are the offspring of the plaintiff and his first wife, who was the daughter of the defendant. The plaintiff wrote the letters, which are dated the 5th and 15th of June, 1910, and are hereinbefore set out at length. The first wife died in January, 1910, and the plaintiff contracted a

second marriage in June of the same year. Since their mother's death, and for some months before, the children have lived with their grandmother and been kindly cared for by the defendant. The plaintiff has seen them weekly, and, as far as the evidence indicates, has shown them marks of paternal affection. There is no proof of the father having treated the children with harshness or of his having given them any commands, advice or example of a corruptive nature, unless his second marriage may be so considered.

On the trial, judgment was rendered against the plaintiff on 17th of April of last year, dismissing the complaint and awarding the custody of the children to the defendant, without taxing costs against either party and failing to appoint a guardian for the minors; all in accordance with the decree as set out in one of the preceding pages. In thus disposing, of the case the court held that the *patria potestas* (paternal authority), while forming an undoubted part of the jurisprudence of Porto Rico, did not signify the immediate right to the physical custody of children on the part of the parent without reserve or conditions. This is true enough, but the conditions and reservations are such as are specified in our statutes. We have heretofore quoted section 236 of our Civil Code, which plainly states the conditions and limitations under which parents may be deprived of the parental authority over their children or in which the same may be suspended. To this statute, as to others, the doctrine in the maxim *"Expresio unius `est exclusio alterius"* applies. So that these are the only cases in which courts can take away, for a shorter or longer period, the right of the father to the control and custody of his children. The record may be searched in vain for any proof of harshness or commands, advice or example of a corruptive nature, such as to justify the judgment herein rendered. The mere fact that the father married, in a shorter period of widowhood than is customary, or took for a second wife a young woman of whom the mother of his first wife did not approve, cannot be considered as conduct

falling under section 236 of the Civil Code. Nor is it cruelty on the part of the father to confide the care of his children to a stepmother. Some such prove most excellent guardians. for children, as everybody knows. There is nothing in the: facts disclosed in the record which shows the present wife of the plaintiff to be an unfit person to train and control his. children under his direction. In the Ryan case, cited by the respondent from the decisions of the Supreme Court of Louisiana, the father was denied the custody of his 13-year-old daughter, because he was found to be a man of immoral character; and the uncle in whose family the girl was living was able to support her, and, moreover, the court was satisfied that out of the troubles and dissensions between her parents the child had grown up to have no affection for her father, and she had reached an age when, to be forced to live with him and his family and to separate from those to whom she had become attached, would be productive of future unhappiness to her, resulting in anything but good. *Ryan ex parte,* 126 La., 454. No such condition of affairs appears in the case presented here. The facts being different the case. is not in point.

Without holding that a father could not in proper cases. confide the custody of his children of tender years to their grandmother, we certainly hold that neither of the letters. introduced in evidence can properly be construed. as more. than a temporary arrangement, which could by their own terms be discontinued at the pleasure of the father, and all his rights as a parent resumed. What is more natural than that as soon as he could find it to be agreeable to his second wife he should wish to bring his children home to his own rooftree, there to enjoy their society and to instruct, educate, support and cherish them according to his means and the dictates of paternal love.

This he had a right to do unless there should appear to, the court some statutory impediment to prevent. It is true that the well-being of the children should be carefully guarded.

by the courts; but they should remember that the law has been enacted also with this end in view. 21 Cyc., 331, 332 and 333; *In re Gates,* 95 Cal., 461. And, while the courts are in the line of duty in exercising the utmost vigilance in protecting children in all their rights and from sufferng any injury whatever, yet this care should be exerted here in the manner pointed out by our Code; and it is the duty of the courts, in this as in all other cases, to track the law. As the trial court, with the very best intentions no doubt, has failed to observe the requirements of the statutes in rendering the judgment appealed from, we must not allow the decision thus made to stand. The father should have the absolute control and custody of his minor children, unless some excellent legal reason to the contrary is alleged and proved.

Had the court only erred in failing to appoint a guardian, this error could have been easily corrected by remanding the case for that purpose; but in our opinion the father is entitled to have his children returned to him. Then we should annul the judgment rendered by the court below and here render a proper judgment in favor of the plaintiff in accordance with the prayer of his complaint.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.